IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

FILED
CLERK'S OFFICE

U.S. DISTRICT COURT
DISTRICT OF MASS.

SUSAN LAFOREST, Plaintiff

v.

04-30061-MAP

S & C AUTOMOTIVE INC. d/b/a COUNTRY JEEP-EAGLE
DAIMLERCHRYSLER SERVICES NORTH AMERICA LLC d/b/a DAIMLERCHRYSLER LLC
Defendants

FILING FEE PAID:
RECEIPT # 305555
AMOUNT $ 150.00
BY DPTY CLK MCL
DATE 3/26/04

Demand for Jury Trial

---

Complaint

---

Jurisdiction

1. Plaintiff's prayed-for damages, including but not limited to actual damages, incidental damages, and punitive damages under M.G.L. ch. 231 s. 85J, are in excess of $50,000.

2. Subject matter jurisdiction of this Court attains pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. s. 2310(d), and the law of supplemental jurisdiction.

Parties

3. Susan LaForest is a natural person who resides in Westfield, Massachusetts.

4. Defendant S & C Automotive Inc., doing business as Country Jeep-Eagle ("Country Jeep") is a Massachusetts corporation with

its principle place of business in Feeding Hills, Massachusetts.

5. Defendant Country Jeep is in the business of selling vehicles to the public.

6. Defendant Country Jeep is engaged in "trade" and "commerce" as defined by Chapter 93A:1(b).

7. At all times during their activities concerning Mrs. LaForest, Defendant Country Jeep's agents and employees were acting under the supervision and direction of Defendant Country Jeep.

8. Defendant Country Jeep is liable under the doctrine of *respondeat superior* for the activities of its employees and agents.

9. Defendant DaimlerChrysler Services North America LLC, doing business as DaimlerChrysler LLC ("DaimlerChrysler"), is a Michigan corporation with a principle place of business in Mansfield, Massachusetts.

10. Defendant DaimlerChrysler is in the business of, among other things, financing the purchase vehicles by the public.

11. Defendant DaimlerChrysler is engaged in "trade" and "commerce" as defined by Chapter 93A:1(b).

12. At all times during their activities concerning Mrs. LaForest, Defendant DaimlerChrysler's agents and employees were acting under the supervision and direction of Defendant DaimlerChrysler.

13. Defendant DaimlerChrysler is liable under the doctrine of

respondeat superior for the activities of its employees and agents.

## Facts and Allegations

14. Ms. LaForest, who needs a van to transport her five children (one a foster child), purchased a used 1999 Venture on March 27, 2002, from Defendant Country Jeep.

15. Mr. Little, Ms. LaForest's father, co-signed the loan for the van.

16. The loan was financed by Defendant DaimlerChrysler.

17. Ms. LaForest told Defendant Country Jeep's salesperson that she needed dependable transportation.

18. At some time in the past, before the sale to Ms. LaForest, the van had been in a major accident and repaired poorly.

19. This material information was known to Defendant Country Jeep and not disclosed to Ms. LaForest, violating Magnuson-Moss, 45 C.F.R. s. 455.1(a)(1), Chapter 93A:2 and common law fraud.

20. The poor condition of the van, which is no longer dependable but on which three years' of payments remain, also violates express and implied warranties of merchantability.

21. Ms. LaForest wanted a four year loan.

22. Defendant Country Jeep changed the loan terms to five years without her knowledge.

23. In addition, Defendant Country Jeep made Mr. Little a joint obligee instead of a surety.

24. These deceptive acts, contrary to Defendant Country Jeep's assertions on which Ms. LaForest relied, violate Chapter 93A:2 and common law fraud.

25. Mechanical trouble began immediately.

26. Major transmission and engine problems were reported by Ms. LaForest on or about April 8, 2002.

27. During the next nine months, including April and September, Defendant Country Jeep failed to satisfactorily repair the transmission and engine problems despite at least three attempts lasting well over ten days, triggering the Lemon Law.

28. Defendant Country Jeep also failed to repair other chronic problems: the power sliding side door, which at first was neither powered nor slid, still does not operate properly.

29. The window regulators on the passenger and driver sides have never operated and, despite Ms. LaForest's timely complaint, Defendant Country Jeep now refuses to repair the windows because they are "out of warranty".

30. Defendant Country Jeep's refusal to fully repair items that were broken from the day of sale violates Magnuson-Moss and Chapter 93A:2.

31. Approximately between April 8 and May 14, 2002, Defendant Country had the van, allegedly to repair the transmission.

32. During this time the van was driven 805 miles, having been dropped off with 36,186 miles showing on the odometer and picked

up with 36,991 miles showing.

33. Adding injury to insult, while in Defendant Country Jeep's possession the van suffered $1558.45 in damage.

34. Defendant Country Jeep's misuse of the van and subsequent refusal to pay for damage constitutes common law fraud as well as violations of Magnuson-Moss and Chapter 93A:2.

35. Ms. LaForest's economic damages include but are not limited to:

Amount for trade-in.................................... $2458.46
21 monthly payments.................................... $7188.51
Car insurance.......................................... $1030.00
Alternate transportation, including rentals.............. $171.62
Payments to Country for repairs.......................... $300.00
Brake repairs (CarQuest 6/10-11/03........................ $70.43
Proper size tires (Town Fair Tire 7/11/03)............... $208.15
Power window motor (R.E. Humason 8/9/03).................. $42.00
Trans. repair & spark plugs (M&W Trans. 9/15/03)......... $180.83
Radiator leak (Brake King 10/18/03)...................... $534.80
Engine repair (M&W Trans. 11/4/03)....................... $138.41

36. Plaintiff also demands the non-refundable portions of the $1500 extended warranty, if any.

37. As the direct result of the above violations, Ms. LaForest has suffered severe distress as noted by her family, her friends, and her doctor.

38. Physical manifestations of this distress include but are not limited to depression (treated with Xanax), uncontrollable crying, sleeplessness, loss of appetite, increased smoking, and family discord.

39. This distress, is compensable. See Gutierrez V. Massachusetts Bay Trans. Auth., 437 Mass. 396 (2002).

Count I - Magnuson-Moss
Defendant Country Jeep

40. The previous paragraphs are incorporated into this Count as if set forth in full.

41. The 1999 Venture is a "consumer product" as defined by Magnuson-Moss section 2301(5).

42. Plaintiff is a "consumer" as defined by Magnuson-Moss section 2301(3).

43. Defendant Country Jeep has no dispute resolution mechanism that meets the requirements of 16 C.F.R. Part 703.

44. Plaintiff gave Defendant Country Jeep a reasonable opportunity on several occasions to cure its failure to comply with its warranties, which it did not.

45. Pursuant to Magnuson-Moss section 2310, Plaintiff is entitled to cancellation of the contract, actual damages, and reasonable attorney fees, expenses, and costs.

Count II - Chapter 93A
Defendant Country Jeep

46. The previous paragraphs are incorporated into this Count as if set forth in full.

47. The acts and omissions of Defendant Country Jeep constitute violations of Chapter 93A:2.

48. Pursuant to 940 C.M.R. s. 3.16(3), violation of a statute calculated to protect consumers is an unfair and deceptive practice, violating Chapter 93A:2.

49. Defendant Country Jeeps violations as stated in Counts I and III through VIII are likewise violations of Chapter 93A:2.

50. Pursuant to Chapter 93A:9, demand was made upon Defendant at least thirty days prior to litigation.

51. A true and accurate copy of the demand letter is attached.

52. Defendant's insurance carrier responded to the demand letter, but made no offer.

53. A true and accurate copy of the insurance carrier's letter is attached.

54. Pursuant to Chapter 93A:9, Plaintiff is entitled to actual damages, to declaratory relief, to an injunction prohibiting Defendant from the acts and practices that violate state law, and treble damages, as well as reasonable attorney's fees and costs.

<u>Count III - Lemon Law</u>
<u>Defendant Country Jeep</u>

55. The previous paragraphs are incorporated into this Count as if set forth in full.

56. After at least three attempts and/or ten days out of service, Defendant Country Jeep failed to repair major defects in the used van sold to Plaintiff.

57. Pursuant to M.G.L. ch. 90 s. 7N 1/4, Plaintiff is entitled

to a rescission of the transaction, return of all out of pocket payments, including but not limited to the sale price of the car, return of all registration and title fees, refund of all taxes, pro-rata payments for car insurance, and payments for out of pocket expenses, including repairs.

58. Plaintiff is also entitled to distress damages to be awarded within the sound discretion of a trier of fact as well as reasonable attorney fees, expenses, and costs.

<u>Count IV - Express Warranties</u>

<u>Defendant Country Jeep</u>

59. The previous paragraphs are incorporated into this Count as if set forth in full.

60. Defendant Country Jeep breached express warranties by failing or refusing to fix problems with the car.

61. Plaintiff is entitled to actual damages in an amount to be awarded within the reasonable discretion of a jury.

<u>Count V - Implied Warranties</u>

<u>Defendant Country Jeep</u>

62. The previous paragraphs are incorporated into this Count as if set forth in full.

63. Defendant Country Jeep breached implied warranty of merchantability under M.G.L. ch. 106 s. 2-314 and implied warranty of fitness for a particular purpose under M.G.L. ch. 106 s. 2-315 by selling a defective car.

64. Plaintiff is entitled to actual damages in an amount to be awarded within the reasonable discretion of a jury.

Count VI - Fraud

Defendant Country Jeep

65. The previous paragraphs are incorporated into this Count as if set forth in full.

66. Defendant Country Jeep's actions and omissions, as stated above, upon which Plaintiff relied to her detriment, constitute common law fraud.

67. Plaintiff is entitled to actual damages in an amount to be awarded within the reasonable discretion of a jury.

Count VII - Punitive Damages

Defendant Country Jeep

68. The previous paragraphs are incorporated into this Count as if set forth in full.

69. Defendant Country Jeep is liable for punitive damages pursuant to M.G.L. ch. 231 s. 85J ("Whoever, by deceit or fraud, sells personal property shall be liable in tort to a purchaser in treble the amount of damages sustained by him.")

70. Plaintiff is entitled to punitive damages in an amount to be awarded within the reasonable discretion of a jury.

Count VIII - Negligence

Defendant Country Jeep

71. The previous paragraphs are incorporated into this Count as if set forth in full.

72. The acts and omissions of Defendant Country Jeep constitute negligence that directly and proximately caused harm to Plaintiff.

73. Plaintiff is entitled to actual damages to be awarded within the sound discretion of a jury.

Count IX - Damages & Declaratory Relief
Defendant DaimlerChrysler

74. The previous paragraphs are incorporated into this Count as if set forth in full.

75. Pursuant to the FTC Holder Rule and the express language of the contract, any claim or defense against Defendant Country Jeep is a claim or defense against Defendant DaimlerChrysler.

76. Defendant DaimlerChrysler is liable for all claims and defenses that Plaintiff has against Defendant Country Jeep.

77. A demand letter was sent to Defendant DaimlerChrysler under Chapter 93A:9.

78. A true and accurate copy of the demand letter is attached.

79. Defendant DaimlerChrysler responded, but stated only that it would indicate to the credit bureaus that Plaintiff's account was in dispute.

80. A true and accurate copy of Defendant's letter is attached.

81. Plaintiff is entitled to actual damages, a declaration that she and her father owe nothing on the contract, an injunction against Defendant DaimlerChrysler prohibiting placement and/or commanding deletion of any negative information on Plaintiff's and Mr. Little's credit histories, and reasonable attorney fees, expenses, and costs.

Prayer

**WHEREFORE**, Plaintiff prays that the Court grants the following:

1. Actual damages of $50,000, trebled under state law.
2. Punitive damages under state law totalling $150,000.
3. Statutory damages.
4. Rescission of the contract and return of the vehicle to Defendant Country Jeep.
5. A declaration under state law concerning the illegality of Defendant Country Jeep's acts and practices.
6. An injunction prohibiting Defendant Country Jeep from violating state law.
7. A declaration that Plaintiff and her father owe nothing on the contract with Defendant DaimlerChrysler.
8. An injunction against Defendant DaimlerChrysler prohibiting placement and/or commanding deletion of any negative information on Plaintiff's and Mr. Little's credit histories.
9. Reasonable attorney's fees, expenses, and costs.
10. Such other and further relief as the Court deems just and proper.

Jury Demand

Plaintiff demands a jury trial on all issues raised in or related to the complaint.

Respectfully submitted,

Jason David Fregeau,
Trial Attorney (565657)

47 Lincoln Road
Longmeadow, MA 01106
413/567-2461
413/567-2932 fax

Attorney for Plaintiff

**Jason David Fregeau**
**Attorney at Law**
47 Lincoln Road
Longmeadow, MA 01106
Tel. 413-567-2461
Fax 413-567-2932
*Also admitted in Ohio*

February 24, 2004

By Certified U.S. Mail

Sandra J. Cosenzi, President
S & C Automotive Inc.
d/b/a Country Jeep-Eagle
134 Ardsley Rd.
Longmeadow, MA 01106

DaimlerChrysler Services North America LLC
d/b/a DaimlerChrysler LLC
c/o CT Corporation
101 Federal ST.
Boston, MA 02110

Re: LaForest v. S & C Automotive, Inc., et al.

Dear Ms. Cosenzi and Sir or Madam:

I represent Susan LaForest regarding an automobile Ms. LaForest and her father, Jack Little, purchased from Defendant S & C Automotive Inc., doing business as Country Jeep-Eagle ("Country") and assigned to DaimlerChrysler Services North America LLC, doing business as DaimlerChrysler LLC ("DaimlerChrysler"). Defendant Country's acts and omissions contain violations of the federal Magnuson-Moss Warranty Act, 15 U.S.C. ss. 2301-2312 ("Magnuson-Moss"), Federal Trade Commission ("FTC") Regulation 45 C.F.R. s. 455.1(a)(1), the Massachusetts Consumer Protection Act, M.G.L. ch. 93A ("Chapter 93A"), the Massachusetts Used Car Lemon Law, M.G.L. ch. 90 s. 7N1/4 ("Lemon Law"), various Massachusetts regulations, and the common law of Fraud and Negligence. These violations are defenses to the contract and are applicable to Defendant DaimlerChrysler under the FTC's "holder rule" and the express provisions of the contract.

Ms. LaForest, who needs a van to transport her five children (one a foster child), purchased a used 1999 Venture on March 27, 2002, from Defendant Country. Mr. Little co-signed the loan, which was then assigned to Defendant DaimlerChrysler.

Ms. LaForest told Defendant Country's salesperson that she needed dependable transportation. At some time in the past, before sale to Ms. LaForest, the van had been in a major accident and repaired poorly. This material information was known to Defendant Country and not disclosed to Ms. LaForest, violating Magnuson-Moss, 45 C.F.R. s. 455.1(a)(1), Chapter 93A:2 and common law fraud. The poor condition of the van, which is no longer dependable but on which three years' of payments remain, also violates express and implied warranties of merchantability.

Ms. LaForest wanted a four year loan. Defendant Country changed the loan terms to five years without her knowledge. In addition, Defendant Country made Mr. Little a joint obligee instead of a surety. These deceptive acts, contrary to Defendant Country's assertions on which Ms. LaForest relied, violate Chapter 93A:2 and common law fraud.

Mechanical trouble began immediately. Major transmission and engine problems were reported by Ms. LaForest on or about April 8, 2002. During the next nine months, including April and September, Defendant Country failed to satisfactorily repair the transmission and engine problems despite at least three attempts lasting well over ten days, triggering the Lemon Law.

Defendant Country also failed to repair other chronic problems: the power sliding side door, which at first was

neither powered nor slid, still does not operate properly. The window regulators on the passenger and driver sides have never operated and, despite Ms. LaForest's timely complaint, Defendant Country now refuses to repair the windows because they are "out of warranty". Defendant Country's refusal to fully repair items that were broken from the day of sale violates Magnuson-Moss and Chapter 93A:2.

Finally, approximately between April 8 and May 14, 2002, Defendant Country had the van, allegedly to repair the transmission. During this time the van was driven 805 miles, having been dropped off with 36,186 miles showing on the odometer and picked up with 36,991 miles showing. Adding injury to insult, while in Defendant Country's possession the van suffered $1558.45 in damage as shown by the attached estimate. Defendant Country's misuse of the van and subsequent refusal to pay for damage constitutes common law fraud as well as violations of Magnuson-Moss and Chapter 93A:2.

Ms. LaForest's economic damages include but are not limited to:

Amount for trade-in.................................... $2458.46
21 monthly payments.................................... $7188.51
Car insurance.......................................... $1030.00
Alternate transportation, including rentals............. $171.62
Payments to Country for repairs......................... $300.00
Brake repairs (CarQuest 6/10-11/03....................... $70.43
Proper size tires (Town Fair Tire 7/11/03).............. $208.15
Power window motor (R.E. Humason 8/9/03)................. $42.00
Trans. repair & spark plugs (M&W Trans. 9/15/03)......... $180.83
Radiator leak (Brake King 10/18/03)..................... $534.80

Engine repair (M&W Trans. 11/4/03)...................... $138.41
Plaintiffs also demand the non-refundable portions of the $1500 extended warranty, if any.

Also as the direct result of the above violations, Ms. LaForest has suffered severe distress as noted by her family, her friends, and her doctor. Physical manifestations of this distress include but are not limited to depression (treated with Xanax), uncontrollable crying, sleeplessness, loss of appetite, increased smoking, and family discord. This distress, is compensable. See Gutierrez V. Massachusetts Bay Trans. Auth., 437 Mass. 396 (2002).

The above violations are defenses to and void the contract assigned to Defendant DaimlerChrysler. Defendant DaimlerChrysler is put on notice that (1) Ms. LaForest disputes the validity of the contract and will stop making payments on the van, and (2) no negative action should be taken by Defendant DaimlerChrysler, including but not limited to repossession of the van or placing of any negative credit information on Ms. LaForest's or Mr. Little's credit histories. See Jaramillo v. Gonzales, 50 P.3d 554 (N.M. App. 2002). If any negative actions are taken, then Ms. LaForest will seek appropriate remedies, including but not limited to those under the federal Fair Credit Reporting Act, Chapter 93A, and the common law of defamation.

This letter is sent pursuant to Chapter 93A:9 to each person named above in an attempt to settle this matter prior to litigation. Ms. LaForest seeks to return the van and rescind the transaction for herself and her father (who is seriously ill). Ms. LaForest also demands from Defendant Country $25,000 to

cover actual, statutory, and equitable relief as well as attorney fees, expenses, and costs to date. If suit is filed, this demand will increase significantly to include treble and punitive damages. If Defendant Country fails to acknowledge in writing Ms. LaForest's rejection of the car and complete rescission of the transaction, then Defendant will be in violation of 940 C.M.R. ss. 5:04(13) & 5:04(14), which are consequently violations of Chapter 93A:2.

Ms. LaForest demands from Defendant DaimlerChrysler elimination of the alleged debt for her and her father and removal of any negative information from their credit histories. Defendants have thirty days to respond, until March 26, 2004. If we do not hear from Defendants by that date, then we will file suit in federal district court in Springfield, Massachusetts.

Sincerely,

Jason David Fregeau, Esq.

cc: Susan LaForest

CLAIMS FAX: (508) 875-3398
CLAIMS TOLL FREE FAX: (877) 867-1007
ALL OTHERS FAX: (508) 626-5074
ASM FAX: (508) 626-5776

TELEPHONE: (508) 87[illegible]
TOLL FREE: (800) 44[illegible]-4513



# UNIVERSAL UNDERWRITERS GROUP

REGIONAL OFFICE—175 Crossing Boulevard, Suite 100 • Framingham, Massachusetts 01702

MEMBER COMPANIES

UNIVERSAL UNDERWRITERS INSURANCE COMPANY
UNIVERSAL UNDERWRITERS SERVICE CORPORATION
UNIVERSAL UNDERWRITERS ACCEPTANCE CORPORATION
UNIVERSAL UNDERWRITERS INSURANCE SERVICES OF TEXAS, INC.
UNIVERSAL UNDERWRITERS LIFE INSURANCE COMPANY
UNIVERSAL UNDERWRITERS OF TEXAS INSURANCE COMPANY
UNIVERSAL UNDERWRITERS INSURANCE SERVICES, INC.
UNIVERSAL UNDERWRITERS INSURANCE SERVICES OF ALABAMA, INC.

March 15, 2004

Atty Jason Fregeau
47 Lincoln Rd
Longmeadow, MA 01106

| RE: | Insured: | Country Jeep |
|---|---|---|
| | Plaintiff: | Susan LaForest |
| | DOL: | 3/27/02 |
| | File No: | 907-0001432 |

Dear Atty Fregeau:

Please be advised that we are the liability insurance carrier for Country Jeep, and have received your client's claim for handling. We are in the process of obtaining all of the relevant documents regarding the history and the sale of the 1999 Chevrolet Venture in question.

To assist in our investigation please supply us with the information referenced in your letter of February 24, 2004. Specifically we need the documentation in your which indicate the vehicle was in a major accident, and poorly repaired. We also need the documents that support the contention that the mechanical problems that have occurred since your client's purchase are related to the major accident.

Your earliest response would be appreciated. In the mean time, if you have any questions please contact the undersigned.

Very truly yours,

Kenneth Clark
Litigation Specialist

C12540BD © Copyright 2004 Universal Underwriters Insurance Company

DANE & HOWE, LLP
COUNSELLORS AT LAW
45 SCHOOL STREET
BOSTON, MASSACHUSETTS 02108-3204
(617) 227-3600

WALTER A. DANE (1908-1970)
GEORGE W. HOWE (1931-1972)

STEPHEN W. HOWE
JOHN T. DALEY
MICHAEL E. HAGER

FACSIMILE
(617) 523-3362
EMAIL:
danehowe@covad.net

OF COUNSEL
JOHN V. WOODARD
ARNOLD W. HUNNEWELL
WILLIAM A. RYAN, JR.

March 23, 2004

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

Jason David Fregeau, Esquire
47 Lincoln Road
Longmeadow, MA 01106

Re: Susan LaForest
1999 Chevrolet Venture
Account No. 1001680967

Dear Mr. Fregeau:

This office and the undersigned represent DaimlerChrysler Services North America, LLC in many local matters, and I have been asked to respond to your February 24, 2004 letter to it concerning the subject customer and vehicle. In so doing, my client and I do not concede that your letter constitutes a proper demand under Chapter 93A.

At the outset you must appreciate the fact that my client is an indirect lender and in no way participated in the negotiations leading to the execution by your client and her father of a retail instalment contract dated March 27, 2002. The dealer, S&C Automotive Inc., submitted to my client a financing proposal which included the essential contract terms and your client's credit application. After determining your client's creditworthiness, my client agreed to purchase an assignment of the retail contract from the dealer. Consequently, my client is ignorant of the condition of the vehicle whose purchase it was financing and knew nothing about an alleged change in the term of the loan or the alleged change in Mr. Little's status to a co-maker.

While regretting the problems that Ms. LaForest is alleged to have experienced with the vehicle, these are matters that involve the manufacturer and/or the dealer. As I am sure you are aware, the Massachusetts "Lemon law" protects the interests of financers like my client. Cf. Mass. G.L. c. 90, §7N¼ (3)(A)(v). In addition, the Magnuson-Moss Act permits suits only against a person providing a written warranty, which my client did not do. 15 U.S.C. §2310(f).

DANE & HOWE, LLP



You are correct in your understanding that your client's complaints cannot be raised affirmatively against my client but may, if proved, serve as defenses to an action by my client to enforce the terms of the retail contract. Ford Motor Credit Company v. Morgan, 404 Mass. 537 (1989). My client has rights under that contract, and it does not waive them. If your client fails to make the payments required by the retail contract, my client will be entitled to take possession of the 1999 Venture and to apply the proceeds of its disposition to reduce your client's indebtedness to it.

I also note that Jack R. Little was a buyer under the March 27, 2002 retail contract, and my client clearly has rights against Mr. Little. Although you identify Mr. Little as Ms. LaForest's father, your letter does not indicate whether you represent him as well as Ms. LaForest. It strikes me that he is a necessary part to the resolution you seek.

Under the circumstances my client concludes that there has been no unfair or deceptive act, method or practice attributable to it, and it respectfully denies the claim or claims for relief set forth in your letter. If your client insists upon prosecuting these claims, please note that the underlying retail contract provides for arbitration.

However, to avoid escalation of the situation (but without any admission of liability), my client will report the account in question to the appropriate credit bureaus as a disputed account.

Very truly yours,

Michael E. Hager

MEH/ilm
cc by First Class Mail to Addressee